# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| IKRAM DAYIB ABDULLAHI, *et al.*, | : | | |
| Plaintiffs, | : | Civil Action No.: | 23-3900 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 5, 9 |
| | : | | |
| ANTONY J. BLINKEN, *in his official capacity as U.S. Secretary of State*, | : : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFFS' MOTION TO COMPEL

### I.  INTRODUCTION

Ikram Dayib Abdullahi, Abdirahman Mohamed Abdullahi, Maryam Abdikadir Ali, Mustaf Mohamed Ibrahim, Farhiya Hefow Farah, and Salad Ahmed Halane (collectively, "Plaintiffs") bring this suit to compel Antony J. Blinken, in his official capacity as Secretary of the U.S. Department of State ("Defendant"), to adjudicate the visa applications of Plaintiffs Abdirahman Mohamed Abdullahi, Mustaf Mohamed Ibrahim, and Salad Ahmed Halene, which have been stuck in administrative processing for approximately twenty months, twenty-one months, and twelve months, respectively.  Plaintiffs allege that Defendant has improperly withheld and unreasonably delayed action on three of their visa applications in violation of the Administrative Procedure Act ("APA") and the Mandamus Act.  Defendant has moved to dismiss Plaintiffs' complaint, and Plaintiffs subsequently filed a motion to compel Defendant to produce a certified list of the administrative record.  For the reasons set forth below, Defendant's motion to dismiss is granted and Plaintiff's motion to compel is denied.

## II.  FACTUAL BACKGROUND

### A.  Statutory and Regulatory Background

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, authorizes the issuance of visas to various categories of immigrants seeking to enter the United States, including, as relevant here, spouses of U.S. citizens.  *See* 8 U.S.C. § 1154; *see also* 8 C.F.R. § 204.1(a)(1), (b); *Barazandeh v. U.S. Dep't of State*, No. 23-cv-1581, 2024 WL 341166, at *1 (D.D.C. Jan. 30, 2024).  A U.S. citizen seeking permanent resident status for a spouse or other family member may file Form I-130, Petition for Alien Relative, with U.S. Customs and Immigration Services ("USCIS").  *See* 8 C.F.R. § 204.1(a)(1); *see also* 8 U.S.C. § 1154; *id.* § 1151(b)(2)(A)(i) (defining an "immediate relative[]" to include "spouses" for purposes of Form I-130 petitioners).  If USCIS approves the petition, the case is forwarded to the National Visa Center ("NVC") for processing.  8 C.F.R. § 204.2(a)(3).  The NVC serves as the visa application processing center for the State Department.  *Id.*  Following approval of the petition, the foreign spouse must submit paperwork and processing fees to the NVC.  *See* 9 Foreign Affairs Manual ("FAM") 504.1-2(b)(2).  The NVC then schedules a consular interview for the applicant at the embassy with jurisdiction over the applicant's residence.  22 C.F.R. § 42.62.  The consular officer must either issue or refuse the visa following the interview.  *Id.* § 42.81(a).

### B.  Factual Background

#### 1.  The Visa Application for Plaintiff Abdirahman

Plaintiff Abdirahman Mohamed Abdullahi ("Plaintiff Abdirahman"), a national of Djibouti, is the spouse of Plaintiff Ikram Dayib Abdullahi ("Plaintiff Ikram"), a U.S. citizen. Compl. ¶¶ 65–66.  In July 2021, Plaintiff Ikram filed an I-130 petition with the USCIS on behalf of Plaintiff Abdirahaman.  *Id.* ¶ 67.  USCIS approved the petition and forwarded the case to the

NVC for processing. *Id.* On March 7, 2023, Plaintiff Abdirahman interviewed with a consular official at the U.S. Embassy in Djibouti. *Id.* ¶ 70. After the interview, Plaintiff Abdirahman was informed that his application was refused and would have to undergo "mandatory administrative processing." *Id.* 71; Ex. B to Compl., ECF No. 1-2. After timely submitting a requested Form DS-5535 soon after the interview, Plaintiff Abdirahman has yet to receive a final decision. Compl. ¶¶ 72–75.

### 2. The Visa Application for Plaintiff Mustaf

Plaintiff Mustaf Mohamed Ibrahim ("Plaintiff Mustaf"), a national of Somalia, is the spouse of Plaintiff Maryam Abdikadir Ali ("Plaintiff Maryam"), a U.S. citizen. *Id*. ¶¶ 79–80.

In February 2022, Plaintiff Maryam filed an I-130 petition with USCIS on behalf of Plaintiff Mustaf. *Id.* ¶ 81. USCIS approved the petition and forwarded the case to the NVC for processing. *Id.* On February 7, 2023, Plaintiff Mustaf interviewed with a consular official at the U.S. Embassy in Djibouti. *Id.* ¶ 84. After the interview, Plaintiff Abdirahman was informed that his application was refused and would have to undergo "mandatory administrative processing." *Id.* ¶ 85; Ex. B. Since submitting a requested Form DS-5535 the same day of the interview, Plaintiff Mustaf has yet to receive a final decision. Compl. ¶¶ 86–89.

### 3. The Visa Application for Plaintiff Salad

Plaintiff Salad Ahmed Halane ("Plaintiff Salad"), a national of Somalia, is the spouse of Plaintiff Farhiya Hefow Farah ("Plaintiff Farhiya"), a U.S. citizen. *Id*. ¶¶ 93–94.

In June 2021, Plaintiff Farhiya filed an I-130 petition with USCIS on behalf of Plaintiff Salad. *Id.* ¶ 95. USCIS approved the petition and forwarded the case to the NVC for processing. *Id.* On November 7, 2023, Plaintiff Salad interviewed with a consular official at the U.S. Embassy in Djibouti. *Id.* ¶ 98. After the interview, Plaintiff Salad was informed that his

application was refused and would have to undergo "mandatory administrative processing." *Id.*; Ex. B. After timely submitting a requested Form DS-5535 two days after the interview, Plaintiff Salad has yet to receive a final decision. Compl. ¶¶ 99–102.

### C. Procedural Background

On December 29, 2023, just under nine months, ten months, and one month after Plaintiffs Abdirahman, Mustaf, and Salad were respectively informed that their applications required "mandatory administrative processing," they filed this action to compel Defendant to adjudicate their visa applications. Plaintiffs maintain that Defendant retains jurisdiction over their visa applications and further allege that Defendant's delay is unlawful and unreasonable under the APA and the Mandamus Act. *Id.* ¶¶ 125–87.

On March 4, 2024, Defendant moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 5. Plaintiffs motioned in opposition on March 18, 2024, *see* Pls.' Opp'n to Def.'s Mot. to Dismiss ("Pls.' Opp'n"), ECF No. 7, and Defendant filed a reply on March 25, 2024, *see* Def.'s Reply in Supp. of Mot. to Dismiss ("Def.'s Reply"), ECF No. 8. On March 27, 2024, Plaintiffs filed a motion to compel production of the Certified Administrative Record under Federal Rule of Civil Procedure 37(a), Fed. R. Civ. P. 37(a), and Local Civil Rule 7(n), LCvR 7(n). *See* Pls.' Mot. to Compel ("Pls.' Mot."), ECF No. 9. Defendant filed a motion in opposition on April 9, 2024. Def.'s Opp'n to Pls.' Mot. to Compel ("Def.'s Opp'n"), ECF No. 10.

### III. LEGAL STANDARD

#### A. Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss an action or claim when the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion for

dismissal under Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). Federal courts are courts of limited jurisdiction, and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citing *Turner v. Bank of N. Am.*, 4 U.S. 8, 10 (1799)). Thus, on a Rule 12(b)(1) motion, the plaintiff "bears the burden of establishing jurisdiction by a preponderance of the evidence." *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 91–92 (D.D.C. 2020) (quoting *Didban v. Pompeo*, 435 F. Supp. 3d 168, 173 (D.D.C. 2020)); *see also Lujan v. Def.'s of Wildlife*, 504 U.S. 555, 561 (1992). In determining whether there is jurisdiction, the court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)). Courts must accept as true all factual allegations in the complaint and must also construe the complaint liberally, granting the plaintiff the benefit of all inferences that can be drawn from the facts alleged. *See Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). However, factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of the Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13– 14 (D.D.C. 2001) (internal quotations omitted). Furthermore, "[t]he Court need not accept inferences drawn by a plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept a plaintiff's legal conclusions." *Arabzada v. Donis*, 725 F. Supp. 3d 1, 9 (D.D.C. 2024) (citing *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015)).

### B. Rule 12(b)(6)

The Federal Rules of Civil Procedure require plaintiffs to properly "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), abrogated on other grounds by *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). Instead, a court considering a Rule 12(b)(6) motion presumes that the complaint's factual allegations are true and construes them in the light most favorable to the plaintiff. *See, e.g., United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000). Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To that end, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are "couched as factual allegations," *see Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1994)).

### IV.  ANALYSIS

Defendant raises four arguments in favor of dismissing the complaint. First, he contends that Plaintiffs' claims should be dismissed because Plaintiffs failed to name a proper defendant. Def.'s Mot. at 5–6. Second, Defendant argues that Plaintiffs' claims are barred by the consular non-reviewability doctrine. *Id.* at 6–11. Third, Defendant maintains that there is no clear, non-

discretionary duty requiring a consular officer to adjudicate Plaintiffs' visa applications. *Id.* at 11–18.  Finally, Defendant argues that Plaintiffs' complaint fails to state a plausible claim of unreasonable delay.  *Id.* at 18–26.  The Court will address these arguments in turn.

### A.  Improper Defendant

Defendant first argues that he is an improper defendant because he cannot provide the relief Plaintiffs seek.  *Id.* at 5–6.  The Court disagrees.  The INA "grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'"  *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (quoting *Saavedra Bruno v. Albright,* 197 F.3d 1153, 1156 (D.C. Cir. 1999)).  Relying on this language, Defendant argues that he is an improper defendant because he cannot "adjudicate, or re-adjudicate, an application for a visa."  Def.'s Mot. at 5.

No one disputes that the INA bars the Secretary of State from directing a particular outcome with respect to a visa application.  *See Saavedra Bruno*, 197 F.3d at 1156 ("The powers afforded to consular officers include, in particular, the granting, denying and revoking of immigrant and non-immigrant visas."); *see also Baan Rao*, 985 F.3d at 1024 ("A consular officer . . . has the authority to grant, deny or revoke any visa.").  "Control over a consular officer's visa determinations," however, "is not the same as control over the timing by which the consular officer considers the applications presented to her."  *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 10 (D.D.C. 2022).  Put differently, "nothing in *Baan Rao* or *Saavedra Bruno* precludes the Secretary . . . from directing consular officers to conclude matters presented to them 'within a reasonable time.'"  *Id.* (cleaned up) (quoting 5 U.S.C. § 555(b)); *see also Ramirez v. Blinken*, 594 F. Supp. 3d 76, 90 (D.D.C. 2022) ("The provisions and caselaw the government cites stand for a far more limited proposition: that the INA reserves for consular

officials the power to evaluate applications on the merits."). Here, Plaintiffs do not challenge a consular officer's adjudication of Plaintiffs' visa applications and seek only timely adjudication of their applications. Pls.' Opp'n at 14. The Secretary of State is thus a properly named defendant.

### B. Consular Non-Reviewability

Defendant next argues that the doctrine of consular non-reviewability bars Plaintiffs' claims. *See* Def.'s Mot. at 6–11. As its name suggests, the consular non-reviewability doctrine "shields a consular official's decision to issue or withhold a visa from judicial review." *Baan Rao*, 985 F.3d at 1024; *see also Saavedra Bruno*, 197 F.3d at 1160 ("[C]onsular visa determinations are not subject to judicial review."); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950) (explaining that courts cannot "review the determination of the political branch of the Government to exclude a given alien"). Defendant acknowledges that there are "two narrow" exceptions to this general prohibition, Def.'s Mot. at 7 (quoting *Baan Rao*, 985 F.3d at 1024–25), but argue that neither apply to "a suit seeking to compel a further decision on visa applications that have already been refused." *Id.* Defendant concludes, therefore, that the general bar applies and that the consular official's decision to refuse the Plaintiffs' visa application "is immune from review." *Id.* at 9.

The Court will assume, favorably to Plaintiffs, that the doctrine of consular non-reviewability does not bar review of their claims. As Defendant concedes, multiple "judges in this District have held that the [consular non-reviewability] doctrine does not apply in cases where, as here, a consular officer has refused a visa application under" section 221(g). *Id.* at 8. Those courts have explained that "the consular non-reviewability doctrine applies only to final decisions" because it "does not bar judicial review of a consular officer's delay when a visa

application has been provisionally refused pending a final decision." *Al-Gharawy*, 617 F. Supp. 3d at 11 (collecting cases).  Defendant counters that the consular officer's refusal of Plaintiffs' visa applications were final decisions.  Def.'s Mot. at 9.  In other words, he argues that Plaintiffs' visa applications were not conditionally or provisionally refused, but rather that the consular officer's refusal of their visa was a "final" decision "unless superseded by another decision." *Id.*

Until recently, the Court would be inclined to disagree with Defendant's characterization. After all, courts have consistently held that where, as here, a visa "application is still undergoing administrative processing," the State Department's "decision is not final" "even where a refusal has been relayed."  *See Ghadami v. U.S. Dep't of Homeland Sec.*, No. 19-cv-0397, 2020 WL 1308376, at *5 (D.D.C. Mar. 19, 2020); *see also Al-Gharawy*, 617 F. Supp. 3d at 16–17 (concluding that the doctrine of consular non-reviewability did not apply to review of application in "administrative processing" after section 221(g) "refusal"); *Vulupala v. Barr*, 438 F. Supp. 3d 93, 99 (D.D.C. 2020) (same).  Put another way, "any [p]laintiff with an application in 'administrative processing' has not yet received a final decision."  *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Kerry*, 168 F. Supp. 3d 268, 287 (D.D.C. 2016).

The Circuit's recent decision in *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam), casts doubt on the accuracy of the reasoning in those decisions.  In *Karimova*, the court explained that once a consular official refuses a visa application, the visa has been "officially refused." *Id.* at *2.  That is so even if the consular officer simultaneously chooses to place the application in administrative processing: a "visa application remains officially refused" "[u]nless and until" a consular officer decides to "re-open and re-adjudicate the applicant's case." *Id.*  Applied here, *Karimova* thus suggests that once "[a]

9

consular officer reviewed [the Plaintiffs'] application[s], interviewed [them], and ruled that no visa would be granted," their visa applications were "officially refused" notwithstanding its later placement in administrative processing. *See id.* at *4.

The Court need not conclusively determine the extent to which *Karimova* disrupts prior decisions rejecting the government's reliance on the consular non-reviewability doctrine in cases similar to this one. *See id.* at *5 (declining to "decide whether th[e] principle of [consular] non-reviewability applies in this case, which purports to challenge the timing rather than content of a consular visa decision"). That is because, as illustrated below, Plaintiffs' claims fail on their merits in any event.

### C. Clear and Non-Discretionary Duty

Defendant's third argument is that Plaintiffs' claims are not reviewable because there is no "discrete agency action that a consular officer is required to take." *See* Def.'s Mot. at 11. According to Defendant, Plaintiffs have not identified "a clear, non-discretionary duty requiring . . . a consular officer to adjudicate, let alone re-adjudicate, any specific visa application." *Id.* at 11. Defendant's argument is based on the fact that to state a claim for unreasonable delay under the APA, Plaintiffs must allege that the "agency failed to take a *discrete* agency action that it is *required* to take." *Id*. at 12 (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)). In other words, "the APA 'allows courts to provide relief for [an agency's] failure to act,' but only when an agency has failed to take" a specific, mandatory action. *Arabzada*, 725 F. Supp. 3d 1, 4 (quoting *Babamuradova v. Blinken*, 633 F. Supp. 3d 1, 14 (D.D.C. 2022)). By a similar token, courts may resort to the "'drastic' remedy" of mandamus only if "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." *Babamuradova*, 633 F. Supp. 3d at 19 (quoting *Fornaro v.*

*James*, 416 F.3d 63, 69 (D.C. Cir. 2005)).  There is thus a common theme: to proceed under either the APA or the Mandamus Act based on a claim of "an agency's unreasonable delay . . . a plaintiff must allege that an agency has a clear non-discretionary duty to take a specific action and that the agency failed to take that action."  *Arabzada*, 725 F. Supp. 3d 1, 4; *see also Babamuradova*, 633 F. Supp. 3d at 19 ("What plaintiffs must show to establish a mandamus claim is similar to what they must show . . . under the APA, as in both instances plaintiffs must establish that the government has a clear, nondiscretionary duty.").

Here, too, the Court will assume favorably to Plaintiffs that their Complaint identifies a clear, non-discretionary duty.  This is a very generous assumption given that Plaintiffs largely (if not exclusively) rely on section 555(b) of the APA as the source of such a duty.  *See* Pls.' Opp'n at 28–29; *see also* Compl. ¶¶ 19, 172–178.  The Circuit recently made crystal clear, however, that section 555(b) does not impose a clear, non-discretionary duty on a "consular officer to re-adjudicate [an] already-refused [visa] application."  *Karimova*, 2024 WL 3517852, at *3.  That being so, Plaintiffs may not rely on "[s]ection 555(b) of the APA as the source of the consular officer's alleged duty to act."  *Id.*  Again, though, the Court need not scour Plaintiffs' Complaint and opposition briefing to determine whether they have alleged a clear, non-discretionary duty stemming from another source.  Therefore, their claims fail on the merits.

### D.  Unreasonable Delay

Finally, the Court turns to Defendant's argument that Plaintiffs' Complaint fails to state a plausible claim of unreasonable delay.  *See* Def.'s Mot. at 18.  Simply put, Defendant contends that Plaintiffs fail to state a plausible claim because the delays here—less than roughly twenty, twenty-one, and twelve months, respectively—are "not unreasonable as a matter of law."  *Id.*

11

Plaintiffs' claim of unreasonable delay is governed by the APA which, among other things, requires an agency to "proceed to conclude a matter presented to it" in a "reasonable time," 5 U.S.C. § 555(b), and authorizes federal courts to "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1). "The 'central question in evaluating "a claim of unreasonable delay" is whether the agency's delay is so egregious as to warrant mandamus.'" *Babaei v. U.S. Dep't of State*, 725 F. Supp. 3d 20, 29 (D.D.C. 2024) (quoting *In re Core Commc'ns., Inc.*, 531 F. 3d 849, 855 (D.C. Cir. 2008)). This Circuit considers six factors (the so-called "*TRAC* factors") when evaluating unreasonable-delay claims:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecommunications Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984) (cleaned up).

Whether a delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003). Courts use the *TRAC* factors to assess claims of unreasonable delay under both the Mandamus Act and the APA. *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). Applying the *TRAC* factors to the

present case, the Court finds that Plaintiffs' Complaint fails to state a plausible claim of unreasonable agency delay.

### 1. *TRAC* Factors 1 and 2

The first and second *TRAC* factors weigh in Defendant's favor.  Generally, the first *TRAC* factor is the "most important" and carries the most weight.  *See In re Core Commc'ns.*, 531 F. 3d at 855.  Courts typically consider the first and second factors together, however, as both analyze whether there is "sufficient rhyme and reason to explain the [g]overnment's response time." *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 166 (D.D.C. 2021) (cleaned up); *see also Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020).  Here, the Plaintiffs' visa applications have been delayed for approximately twenty, twenty-one, and twelve months, respectively.[1]  *See* Ex. B.  Although Plaintiffs allege that the timeframe established by Congress in 8 U.S.C. § 1571(b)—which states that the State Department must adjudicate immigration benefits within 180 days—applies to the instant case, *see* Pls.' Opp'n at 40, Defendant is correct that "[n]o statutory or regulatory timeline exists within which the State Department or a consular office must re-adjudicate visa applications," *Barazandeh*, 2024 WL 341166, at *8 (quoting *Isse v. Whitman*, No. 22-cv-3114, 2023 WL 4174357, at *7 (D.D.C. June 26, 2023)); *see also* Def.'s

---

[1] Courts calculate delays in visa processing using the period between "the last [g]overnment action" and the issuance of the opinion. *See, e.g.*, *Brzezinski v. U.S. Dep't of Homeland Sec.*, No. 21-cv-376, 2021 WL 4191958, at *1, *4 n.3 (D.D.C. Sept. 15, 2021) (analyzing a seventeen-month delay between "the last [g]overnment action" and the opinion's issuance); *Eljalabi v. Blinken*, No. 21-cv-1730, 2022 WL 2752613, at *5 (D.D.C. July 14, 2022) (analyzing a twenty-two-month delay between NVC's last action and the opinion's issuance). The last clear government actions in Plaintiff Abdirahman, Mustaf, and Salad's visa applications respectively occurred on March 7, 2023, February 7, 2023, and November 7, 2023 respectively, when consular officers refused each of the Plaintiffs' visa applications.  *See* Ex. B.  Therefore, the periods the Court will use to analyze the delay in the instant case is the roughly twenty, twenty-one, and twelve-month spans, respectively, between the consular officers' refusals and the issuance of this Opinion.

Mot. at 20–21.  That being so, the Court "'turn[s] to case law as a guide' to determine the reasonableness" of Defendant's delay in processing the Plaintiffs' visa applications.  *Ahmadi v. Scharpf*, No. 23-cv-953, 2024 WL 551542, at *5 (D.D.C. Feb. 12, 2024) (quoting *Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020)).

"District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable."  *Id.* (quoting *Rahman v. Blinken*, No. 22-cv-2732, 2023 WL 196428, at *4 (D.D.C. Jan. 17, 2023)).  Conversely, courts in this jurisdiction have typically concluded that delays of two or three years are not unreasonable.  *See Barazandeh*, 2024 WL 341166, at *8 (collecting cases).  And indeed, recently, the D.C. Circuit found that a delay of four-and-a-half years was not unreasonable.  *See Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 342 (D.C. Cir. 2023).  Although Plaintiffs point to decisions in other jurisdictions that have found shorter delays to be unreasonable, *see* Pls.' Opp'n at 38–39, this Court is persuaded by the overwhelming trend within this Circuit.  It finds, therefore, that, given the circumstances, Defendant's delays of approximately twenty, twenty-one, and twelve months are not unreasonable.

### 2.  *TRAC* Factors 3 and 5

The third and fifth *TRAC* factors tilt in Plaintiffs' favor.  Those factors evaluate whether human health and welfare are at stake and if there are interests that would be prejudiced by the visa processing delay.  *See TRAC*, 750 F.2d at 80.

Plaintiffs claim that the delayed adjudication of their visa applications has left them in an "indefinite limbo," forcing them to put their plans on hold and leaving them "unable to definitively plan for their future."  Compl. ¶¶ 6, 150.  The Complaint also noted that Plaintiff Maryam has been raising her child as a working single mother while her spouse, Plaintiff

14

Mustaf, awaits a final decision on his visa application. *Id.* ¶ 6. "Prolonged separation from a spouse or immediate family member may be considered a risk to human health and welfare." *Barazandeh*, 2024 WL 341166, at *8. The Court does not take lightly that the interests of all Plaintiffs here are "undeniably significant." *Didban*, 435 F. Supp. 3d at 177.

Defendant does not contest these propositions. Instead, he argues that prioritizing Plaintiffs' visa applications "will simply benefit certain noncitizens to the detriment of others who may have experienced the same or worse impacts from a delay" because resources would have to be directed away "from the adjudications that the State Department has identified as more urgent, requiring this Court to overrule the Department's prioritization decisions and place the [Plaintiffs] at the front of the line." Def.'s Mot. at 24–25. True as that may be, these arguments are more appropriately directed at the fourth *TRAC* factor. Plaintiffs' allegations of harm due to their separation from their spouses are sufficient for *TRAC* factors three and five to weigh in their favor.

### 3. *TRAC* Factor 4

The Court next considers the fourth *TRAC* factor—a factor which carries substantial weight. *See Da Costa*, 80 F.4th at 340, 343. The fourth factor "consider[s] the effect of expediting delayed action on agency activities of a higher or competing priority." *Id.* at 343 (quoting *TRAC*, 750 F.2d at 80). Courts are generally hesitant to direct agencies as to which tasks to prioritize, particularly if such intervention would move the petitioner to "the head of the queue" and "simply move[] all others back one space and produce[] no net gain." *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75–76 (D.C. Cir. 1991). In fact, the D.C. Circuit "has refused to grant relief, even [when] all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and

15

produce no net gain." *Milligan*, 502 F. Supp. 3d at 319 (quoting *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100) (cleaned up).

The Circuit's recent decision in *Da Costa* aptly illustrates these principles. There, the plaintiffs sought an order compelling USCIS to adjudicate their visa applications within fourteen days, to process any additional requested information within seven days, and to forward any approved applications to the NVC for processing within three days. *See Da Costa*, 80 F.4th at 344. In finding that the fourth *TRAC* factor weighed against the plaintiffs, the Circuit explained that the relief the plaintiffs sought was, at bottom, an order that would move their visa petitions "ahead of longer-pending petitions." *Id.* at 343. The court looked unfavorably on such a request in large part because "moving [the] [p]laintiffs' petitions to the front of the line would disrupt competing agency priorities with no overall improvement in the USCIS backlog." *Id.* The court also emphasized that, although "judicial intervention could assist [the plaintiffs], it would likely impose offsetting burdens on equally worthy" applicants that were "equally wronged by the agency's delay." *Id.* at 344 (quoting *In re Barr Lab'ys*, 930 F.2d at 73). The Circuit concluded, therefore, that "the effect that [the plaintiffs'] requested relief would have on the queue of petitioners waiting ahead of the [p]laintiffs, weighs against judicial intervention to expedite adjudication of [p]laintiffs' petitions." *Id.*

The same is true here. Compelling agency action on Plaintiffs' visa applications would "impose offsetting burdens on equally worthy" applicants by effectively putting Plaintiffs "at the head of the queue," thereby "mov[ing] all others back [three] space[s] and produc[ing] no net gain." *In re Barr Lab'ys.*, 930 F.2d at 73, 75. Put slightly differently, granting Plaintiffs' requested relief would "necessarily come at the expense of" applicants who, like Plaintiffs, have likely also been waiting for months or years for their visas to be adjudicated. *See Da Costa*, 80

16

F.4th at 344 (internal quotation marks omitted).  Moreover, granting Plaintiffs their requested relief would require the State Department to "reorder[] [its] priorities" in a case where the "agency is in a unique—and authoritative—position to . . . allocate its resources in the optimal way." *In re Barr Lab'ys.*, 930 F.2d at 76.  This, the D.C. Circuit has admonished, is something that courts should not do.  *See id.*  For all of these reasons, the Court finds that the fourth *TRAC* factor weighs in Defendant's favor.

The same is true here.  Although the underlying administrative process in this case (*i.e.*, conducting security investigations) does not appear to be addressed or resolved in a first-in-first-out basis, *see* Pls.' Opp'n at 43, compelling agency action on Plaintiffs' applications would "impose offsetting burdens on equally worthy" applicants by effectively putting Plaintiffs "at the head of the queue," thereby "mov[ing] all others back one space and produc[ing] no net gain," *In re Barr Lab'ys*, 930 F.2d at 73, 75.  And despite Plaintiffs' assertions that they "should already be at the front of the 'queue,'" Pls.' Opp'n at 43, and that Defendant has not even "established that there is a queue," *id*. at 42, there are likely thousands of similarly situated applicants who have waited equally as long or longer, *see* Ex. C to Pls.' Opp'n, Decl. of Carson Wu at ¶ 4, ECF No. 7-3.  Granting Plaintiffs' requested relief would therefore "necessarily come at the expense of similarly situated applicants." *Da Costa*, 80 F.4th at 344 (internal quotation marks omitted).  Moreover, granting Plaintiffs their requested relief would require the State Department to "reorder[ ] [its] priorities" in a case where the "agency is in a unique—and authoritative—position to . . . allocate its resources in the optimal way." *In re Barr Lab'ys*, 930 F.2d at 76.  This, the D.C. Circuit has admonished, is something that courts should not do.  *See id*.  For all of these reasons, the Court finds that the fourth TRAC factor weighs in Defendant's favor.

#### 4. *TRAC* Factor 6

The sixth *TRAC* factor, on the other hand, does not weigh in either party's favor. This factor requires courts to "determine whether the agency has acted in bad faith in delaying action." *See Gona v. U.S. Citizenship & Immigr. Servs.*, No. 20-cv-3680, 2021 WL 736810, at *5 (D.D.C. Feb. 25, 2021). Plaintiffs allege that the Defendant has "cost Plaintiffs years of precious time together" and that his "blatant disregard for the indefinite suffering of separated families" shows that he has acted with "impropriety." Compl. ¶¶ 181, 184. The Court finds that these allegations are unsupported. The sixth factor is, therefore, neutral. *See Fakhimi v. Dep't of State,* No. 23-cv-1127, 2023 WL 6976073, at *11 ("[T]he lack of plausible allegations of impropriety does not weigh against [plaintiff], and therefore does not alter the Court's analysis."); *see also Da Costa*, 80 F.4th at 345–46 (finding the sixth *TRAC* factor "neutral" where plaintiffs' allegations of bad faith were "conclusory and implausible").

#### 5. Weighing the *TRAC* Factors

Taking all six *TRAC* factors together, the Court concludes that Plaintiffs have not stated a claim for unreasonable delay under the APA or the Mandamus Act. The relatively minimal twenty, twenty-one, and twelve-month delays respectively, prior case law, and the fact that granting Plaintiffs the relief they seek would come at the expense of other similarly-situated applicants that have waited as long (if not longer) for their applications to be adjudicated all contribute to the conclusion that the delays Plaintiffs have experienced have not been unreasonable. While *TRAC* factors three and five do weigh somewhat in Plaintiffs' favor, a holistic review of the factors does not allow these two factors to eclipse the rest. In this situation, "the government's interests in balancing its own priorities" outweigh the individual harm done to

Plaintiffs as they await final decisions. *Milligan*, 502 F. Supp. 3d at 320 (quoting *Bagherian*, 442 F. Supp. 3d at 95–96).

### E.  Plaintiffs' Motion to Compel Production of the Certified Administrative Record

Lastly, Plaintiffs have filed a motion to compel the Certified Administrative Record pursuant to Local Civil Rule 7(n). *See generally* Pls.' Mot.. Rule 7(n) says:

> In cases involving the judicial review of administrative agency actions, unless otherwise ordered by the Court, the agency must file a certified list of the contents of the administrative record with the Court within 30 days following service of the answer to the complaint or simultaneously with the filing of a dispositive motion, whichever occurs first.

LCvR 7(n)(1).  Plaintiffs in immigration mandamus cases filed in this District frequently move to compel production of the administrative record, and courts in this District have "routinely rejected those motions." *Janay v. Blinken*, No. 23-cv-3737, 2024 WL 3432379, at *3 (D.D.C. July 16, 2024); *see also Dastagir*, 557 F. Supp. 3d at 164 n.5 (holding Rule 7(n) does not apply to cases seeking to compel agency action).  Because the administrative record is not necessary to decide Defendant's motion to dismiss, the Court finds that Plaintiffs' motion to compel is denied.

### V.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 5) is **GRANTED** and Plaintiffs' Motion to Compel (ECF No. 9) is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  November 25, 2024                                                                RUDOLPH CONTRERAS
                                                                                                         United States District Judge